IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     **CRIMINAL ACTION** |
| v. | : |
| | :     **No. 20-438** |
| SHAQUILL MORRIS | : |

### MEMORANDUM

PRATTER, J.                                                                                                     SEPTEMBER 21, 2022

Shaquill Morris pled guilty to possession of a firearm by a felon, possession with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking crime. All of the offenses occurred on October 13, 2020. In his plea agreement, Mr. Morris agreed that pertinent conduct for the Court's consideration at sentencing included November 13, 2020 unlawful possession of a firearm and unlawful possession of heroin, fentanyl, and phencyclidine with the intent to distribute. At the sentencing hearing Mr. Morris was sentenced as a "career offender" under U.S.S.G. § 4B1.2. The sentence was 216 months' imprisonment, followed by five years' supervised release. No fine was imposed, but a $300 special assessment was included.

### BACKGROUND

#### I. Factual Background

On October 13, 2020, two Philadelphia police officers arrived by car in the area of the 2500 block of South Millick Street and saw Mr. Morris walking on the 6000 block of Theodore Street. The officers pulled up next to Mr. Morris and smelled a strong odor of phencyclidine (PCP) coming from his person. One of the officers called out to Mr. Morris. In response, Mr. Morris fled on foot, while holding the front of his waistband. The officers pursued Mr. Morris on foot and took him into custody on the 2600 block of Dewey Street. From his person, the officers retrieved a black Glock 27 bearing the serial number LFF-524, loaded with twenty-one (21) live rounds in an extended magazine and one round in the chamber; a clear bag containing seventy-five (75) clear

1

heat-sealed bags, each containing an off-white chunky substance (alleged crack cocaine); and a clear glass jar containing a small amount of alleged PCP. A subsequent chemical analysis of the substances recovered from Mr. Morris' person by the Philadelphia Police Department Chemistry Laboratory confirmed that the heat-sealed bags contained a detectable amount of cocaine base (crack). Mr. Morris was charged and released on bail several days later.

A search warrant was issued for Mr. Morris' residence at 2652 South Robinson Street on November 12, 2020. The next day, Federal Bureau of Investigation agents searched the 2652 South Robinson Street residence. Mr. Morris, a female identified as his girlfriend, and a juvenile female identified as the daughter of Mr. Morris' girlfriend, were inside the residence at the time of the search. FBI agents recovered a Taurus, Judge .410 Revolver bearing serial number LS449048, loaded with four live rounds and one spent .410 round; approximately thirty (30) bundles of heroin; a sum bulk of heroin; a vinegar jar and vials containing PCP; loose magazines; loose ammunition; approximately ten (10) to twenty (20) packets of crack cocaine; and approximately twelve hundred dollars ($1,200.00). The agents found the firearm, magazines, some of the heroin, a holster, ammunition, and cocaine packaging materials in the bedroom where Mr. Morris slept. Mr. Morris then led an FBI Task Force Officer to the basement of the residence where the agents found the bulk of the PCP and the bundles of heroin.

The substances recovered from Mr. Morris' residence were submitted to the Drug Enforcement Administration laboratory for analysis. The total amount of heroin recovered from the residence was 120.35 grams. The total amount of fentanyl recovered was 4.187 grams. The total amount of cocaine was 4.023 grams. The total net weight of the PCP was 213.537 grams, and the total amount of pure substance was determined to be 14.974 grams.

A grand jury returned a three-count indictment on December 1, 2020 charging Mr. Morris with the following offenses, all of which occurred on October 13, 2020: possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count One), possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Two), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). Mr. Morris plead guilty to the indictment on November 16, 2021. His plea agreement provides that under U.S.S.G. § 1B.2, Mr. Morris committed the following offenses and was to be treated as if he was convicted of additional counts: on November 13, 2020, Mr. Morris unlawfully possessed a firearm and possessed heroin, fentanyl, and phencyclidine, all with the intent to distribute.

On September 8, 2022, as stated above, Mr. Morris was sentenced as a career offender pursuant to U.S.S.G. § 4B1.2 to 216 months' imprisonment, five years' supervised release, and a $300 special assessment.

## II. Criminal History

Because Mr. Morris is being sentenced as a career offender, the Court will discuss his prior convictions.

On April 15, 2009, in the Municipal Court of Philadelphia County, Mr. Morris was convicted of possession of marijuana. He was ordered to pay a fine but no jail time was imposed. On December 17, 2010, in the Philadelphia County Court of Common Pleas, Mr. Morris was convicted of receiving stolen property and unauthorized use of an automobile. He was sentenced to one to three years' incarceration. On January 6, 2011, again in the Philadelphia County Court of Common Pleas, Mr. Morris was convicted of possession of a firearm by a prohibited person, carrying a firearm in public, and reckless endangerment. He was sentenced to one to three years' incarceration. On August 12, 2011, in the Philadelphia County Court of Common Pleas, Mr. Morris was convicted of possession with intent to deliver a controlled substance (marijuana). He

3

was sentenced to two and one half to seven years' incarceration. On August 14, 2014, in the Philadelphia County Court of Common Pleas, Mr. Morris was convicted of robbery and possession of an instrument of crime and sentenced to two to four years' incarceration. There is no dispute about the fact of these previous convictions.

## LEGAL STANDARD

District courts must follow a three-step process when sentencing a defendant: (1) calculate the defendant's Guidelines sentence; (2) formally rule on any motions and state on the record whether the court is granting a departure and how any departure affects the Guidelines calculation; and (3) exercise discretion by considering the relevant factors set forth in 18 U.S.C. § 3553(a).[1] *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). The Court must act reasonably and give meaningful consideration to the relevant § 3553(a) factors. *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendants; (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines or policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a).

---

[1] In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court of the United States held that the Federal Sentencing Guidelines are advisory only, not mandatory.

## DISCUSSION

### III. Mr. Morris' Status as a Career Offender

Mr. Morris objects to being sentenced as a career offender, a status under the Guidelines that figures prominently in the consideration of the Guidelines applicable to Mr. Morris. "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Where a defendant is convicted of an offense under 18 U.S.C. § 924(c), the guideline range is covered by U.S.S.G. § 4B1.1(c)(3). With an offense level score of 29 which Mr. Morris has after a three-level reduction for acceptance of responsibility, the Guideline range is 262-327 months.

#### A. The Categorical Approach

To merit the career offender sentencing enhancement, a defendant must have been convicted of at least two prior felony offenses, each of which must have been either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Mr. Morris contends that his 2014 robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(ii) is not a crime of violence. This is the only one of Mr. Morris' previous convictions that is in dispute for purposes of resolving the career offender dispute.

A "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material

5

as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a). The first provision is referred to as the "elements clause," and the second provision as the "enumerated clause." An offense may be deemed a "crime of violence" under either the elements clause or the enumerated clause. *See* U.S.S.G. § 4B1.2(a).

In Pennsylvania, a person is guilty of first degree robbery "if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens immediately to commit any felony of the first or second degree." 18 Pa. Cons. Stat. § 3701(a)(1)(i)-(iii), (b)(1). The Third Circuit Court of Appeals has held that Pennsylvania's robbery statute is divisible because it lays out alternative elements of the offense. *United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013).

For the reasons set forth below, § 3701(a)(1)(ii) robbery for which Mr. Morris was convicted on August 14, 2014 is a crime of violence under either the elements clause or the enumerated clause.

### 1. The Elements Clause

To determine whether a conviction is a predicate crime of violence under the elements clause of the career offender enhancement, the Court must employ the "categorical approach." *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018). The categorical approach "requires [the court] to compare the elements of the statute under which the defendant was convicted to the [G]uidelines' definition of a 'crime of violence.'" *Id.* "If the statute forming the basis of the defendant's conviction necessarily has" as an element "the use, attempted use, or threatened use of physical force against another person[,]" then "the statute proscribes a predicate crime of violence within the meaning of the Guidelines. But if the statute of conviction lacks such an element, it 'sweeps more broadly' than the Guidelines' definition, and a prior conviction under the

statute cannot serve as a career offender predicate." *United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018). Under the categorial approach, the Court does not take into consideration how the defendant actually committed the offense. *Id.* Instead, the Court must "presume that the defendant [committed the offense] by engaging in no more than the minimum conduct criminalized by the state statute." *Id.* (internal quotation marks omitted).

Mr. Morris was convicted of § 3701(a)(1)(ii) robbery. The applicable statute provides that "[a] person is guilty of robbery if, in the course of committing a theft, he…(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury." "Serious bodily injury" satisfies the elements clause because it equates to the use, or threatened use, of physical force against another person. *Ramos*, 892 F.3d at 606. Physical force is defined as "force capable of causing physical pain or injury to another person." *United States v. Chapman*, 866 F.3d 129, 132 (3d Cir. 2017) (quotation marks omitted) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). The "knowing or intentional application of force" is necessarily a "use" of force required by the elements clause. *See Tran v. Gonzales*, 414 F.3d 464, 470 (3d Cir. 2005).

To analyze the statute and conviction at issue, the Court looks first to the Third Circuit Court of Appeals holding as to New Jersey's robbery provision which has been found to be a crime of violence under the U.S.S.G. § 4B1.2 elements clause because, like the Guidelines, New Jersey law requires that a defendant "place another in fear of physical pain or injury." *United States v. McCants*, 952 F.3d 416, 428 (3d Cir. 2020). The very same is true of Pennsylvania's § 3701(a)(1)(ii), which, like its New Jersey counterpart, requires the defendant to intentionally place another in fear of immediate bodily injury. Therefore, the Third Circuit Court of Appeals' assessment of the New Jersey statute can properly inform as to proper consideration of the

Pennsylvania statute. Hence, § 3701(a)(1)(ii) robbery is also a crime of violence under the elements clause.

### i. Intent Requirement

Nonetheless, Mr. Morris argues that § 3701(a)(1)(ii) robbery is not a crime of violence under the elements clause because robbery may be committed with a reckless *mens rea* rather than being committed intentionally. Mr. Morris relies on *Borden v. United States*, 141 S. Ct. 1817 (2021), which held that crimes committed with a reckless *mens rea* do not necessarily involve the "use of physical force against the person of another," and thus do not categorically qualify as a "crime of violence." Pennsylvania's "default" *mens rea* when one is not provided by the statute is indeed recklessness. *See* 18 Pa. Cons. Stat. Ann. § 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if the person acts intentionally, knowingly or recklessly with respect thereto."). Section 3701(a)(1)(ii), however, specifies intent as the applicable *mens rea* and involves the "use of physical force against the person of another." So, neither *Borden* nor § 302(c) undermine this Court's holding that § 3701(a)(1)(ii) robbery is a crime of violence for Guideline application and calculation purposes.

To further explain this interpretation of § 3701(a)(1)(ii), the Court highlights the language of the law which explicitly imposes an intent requirement for part of the subsection, to wit, the focus on conduct that "*intentionally* puts him in fear of immediate serious bodily injury." "Where a statute specifies the *mens rea*, courts ordinarily interpret it as applying throughout the statute." *Larios v. Att'y Gen. United States*, 978 F.3d 62, 71 (3d Cir. 2020). So, the intent requirement applies to the entire provision. Indeed, if § 3701(a)(1)(ii) robbery did not require intentional conduct, it would set forth two different *mens rea* elements, and would thus be divisible within itself for the application of the categorical approach. Section 3701(a)(1)(ii) robbery is referred to

as one subsection, not as two subsections within subsection (ii). This further supports the conclusion that the subsection as a whole requires intentional conduct.

Courts in this District have held that because § 3701(a)(1)(ii) robbery requires proof of intent, not mere recklessness, it satisfies the elements clause. *United States v. Riley*, 574 F. Supp. 3d 248, 264 (E.D Pa. 2021). The Court has emphasized that definitions of threat "indicate that a threat requires that the assailant outwardly exhibit an *intent* to harm another, which in turn, implies that a *person must act with purpose or knowledge when they make a threat*." *Id.* (emphasis added). A person "acts knowingly when he is aware that a result is practically certain to follow from his conduct. It is difficult to imagine how a person would outwardly show that he means to inflict harm on another without being 'practically certain' that his conduct would constitute a threat." *Id.* (internal citations omitted). Hence, because § 3701(a)(1)(ii) robbery requires intent, *Borden* does not present a barrier to finding that the offense satisfies the elements clause. *Id.*

Pennsylvania state court decisions consistently describe § 3701(a)(1)(ii) robbery as requiring proof of intentional *mens rea*. For example, in *Com. v. Spurell*, 2016 WL 3223653, at *21 (Pa. Super. June 10, 2016), the Superior Court of Pennsylvania specifically addressed the intent requirement for § 3701(a)(1)(ii) robbery: "In sufficiently proving this mode of robbery, the prosecution may rely on circumstantial evidence, in whole or part, to establish beyond a reasonable doubt all or some of this crime's requisite elements, *including a defendant's necessary intent.*" *Id.* (emphasis added) (internal citations omitted). The Superior Court of Pennsylvania also observed "[t]hat robbery includes an additional element of fear of serious bodily injury and a greater *mens rea of intent rather than recklessness.*" *Com. v. Fisher*, 2015 WL 9306912, at * 14 (Pa. Super. Dec. 22, 2015) (emphasis added).

### *ii.* *Realistic Probability Rule*

In applying the categorial approach, the Court ignores the defendant's conduct in committing the crime and focuses on the "minimum conduct criminalized by the state statute." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). This is not, however an "invitation to apply legal imagination to the state offense." *Id.* (internal quotation marks omitted). Rather, to establish that a state statute is not a categorical match, a defendant must demonstrate "a realistic probability. . . that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). The defendant must point to his own case, or other cases, where the state applied the statute in the way the defendant argues. *Id.* Here, the Government correctly observes that there is no "realistic probability" of applying § 3701(a)(1)(ii) to a case of robbery involving mere recklessness because § 3701(a)(1)(ii) plainly does not reach reckless conduct.

For all of these reasons, the Court concludes that § 3701(a)(1)(ii) robbery is a crime of violence under the elements clause.

### 2. The Enumerated Clause

The Court also analyzes whether robbery is a crime of violence under the enumerated clause because it explicitly lists "robbery" as a crime of violence. U.S.S.G. § 4B1.2(a)(2). In doing so, the Court will "compare the elements of the state offense, forming the basis of the defendant's conviction, with the elements of the 'generic' crime." *United States v. Graves*, 877 F.3d 494, 501 (3d Cir. 2017). "To identify the elements of the generic offense of robbery, [the court] will examine the Model Penal Code (MPC), state laws, and learned treatises." *Id.* at 502. The Third Circuit Court of Appeals has held that "the generic definition of robbery is . . . the taking of property from another person or from the immediate presence of another person by force or by intimidation." *McCants*, 952 F.3d at 428-29. Generic robbery encompasses crimes in which the offender is

reckless. Therefore, if Pennsylvania's default *mens rea* of recklessness applies to § 3701(a)(1)(ii) robbery, then Pennsylvania's robbery offense would be a categorical match with robbery under U.S.S.G. § 4B1.2(a)(2).

In defining the generic version of a crime, the Third Circuit Court of Appeals has held that "the most important factor . . . is the approach of the majority of state statutes defining the crime." *Graves*, 877 F.3d at 504. "[A]ll fifty states define robbery, essentially, as the taking of property from another person or from the immediate presence of another person by force or by intimidation." *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010) (emphasis removed). There is a lack of consistency between states regarding the *mens rea* required for robbery, with some requiring proof of intent and others requiring only recklessness. *See e.g., United States v. Martinez-Hernandez*, 932 F.3d 1198, 1203 (9th Cir. 2019) (explaining that the California robbery statute, Cal. Penal Code § 211, may be committed with an accidental use of force); *State v. Sewell*, 603 A.2d 21, 29 (N.J. 1992) (holding that "'knowledge' is the requisite mental state for the injury/force element of robbery"). However, the robbery offense in the Model Penal Code (MPC) requires only recklessness and subsections (i) through (iii) of the Pennsylvania robbery statute very closely mirror the elements of the MPC offense. *See* 18 Pa. Cons. Stat. § 3701(i)-(iii); MPC § 222.1(1)(a)-(c).

Of additional import is the fact that the common law did not require proof of *mens rea* for the use of force element of a robbery offense. *See Stokeling v. United States*, 139 S. Ct. 544, 550 (2019). In *Stokeling*, the Supreme Court of the United States observed that under the common law, "if any injury be done to the person, or there be any struggle by the party to keep possession of the property before it be taken from him, there will be sufficient actual 'violence' to establish robbery." *Id.* (citing 2 W. Russell, Crimes and Indictable Misdemeanors 68 (2d ed. 1828)) Further, the

common law did not distinguish between levels of violence—if the act physically overcame the victim, it constituted violence. *Id.* The intent of the perpetrator of violence was not a factor in determining whether the offense of robbery has been committed.

Robbery is a "quintessential" predicate crime of violence. *Id.* at 551. According to its Policy notes, the Sentencing Commission aims to premise sentencing enhancements on the offense of robbery. To find that robbery committed with reckless *mens rea* is not a crime of violence would be at odds with this aim. Such a finding would potentially remove the application of the sentencing enhancements to several states' robbery statutes. Logic compels holding that robbery is a crime of violence under the enumerated clause also because it can be committed with reckless *mens rea* as to the use of force, rendering it a match with the generic definition of robbery.

Mr. Morris urges this Court to consider *United States v. Sumner*, 2022 WL 951374 (D.D.C. March 30, 2022) to find that Pennsylvania robbery is no longer a crime of violence.[2] Mr. Sumner had argued that his Pennsylvania conviction for robbery did not qualify as a predicate crime of violence. *Id.* at *3. This prompted the sentencing court to observe that because Mr. Sumner was "charged under *all* of the then-extant subsections of the Pennsylvania robbery statute, and available judicial records indicate only that he pleaded guilty to 'F1,' the basis for Mr. Sumner's Robbery convictions cannot be narrowed for purposes of applying the categorical analysis." *Id.* at *14 (emphasis added) (internal quotation marks omitted). The D.C. District Court concluded that Pennsylvania robbery does not qualify as a crime of violence under the enumerated clause because subsection (iii) "is broad enough to encompass non-violent conduct[,]" and "there is no person or presence requirement." *Id.* at *19, 20. Nonetheless, this Court is constrained to point out that in contrast to Mr. Sumner, who was convicted under robbery subsections (i), (ii), and (iii), Mr. Morris

---

[2] Mr. Morris acknowledges that *Sumner* is not binding on this Court.

was convicted only under robbery subsection (ii), which requires intentional conduct. *Sumner* is therefore inapplicable here and does not undermine this Court's holding that § 3701(a)(1)(ii) robbery is a crime of violence under the enumerated clause.

For all of these reasons, § 3701(a)(1)(ii) robbery is a crime of violence under the enumerated clause and for this reason as well supports the application of the career offender enhancement under the Guidelines.[3]

## IV. The § 3553(a) Factors

To fully discuss the sentence the Court concluded Mr. Morris had earned, the relevant § 3553(a) factors will be discussed briefly.

### A. **The Nature and Circumstances of the Offense**

In this case, Mr. Morris has been convicted of a serious offense. After a host of earlier convictions, including a robbery conviction in 2014, Mr. Morris proceeded to sell drugs and carry a firearm. He was arrested in October 2020. In November 2020, just weeks after being released on bail, he was found to possess 200 grams of PCP, over 100 grams of heroin, and a firearm. The Government points out that Mr. Morris took little time to amass a large amount of narcotics and

---

[3] The Court reaches the same conclusion with respect to Mr. Morris' sentence by applying the "modified categorical approach." This approach may be applied when the statute of conviction is divisible. *Ramos*, 892 F.3d at 606-08. Under the modified categorical approach, the Court can look beyond the statute of conviction to documents including the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judgment to which the defendant assented" to identify the specific statutory provision that serves the basis of the defendant's conviction. *Id.* At 607. The categorical approach is then applied to that specific statutory provision. *Abdullah*, 905 F.3d at 744. Pennsylvania's robbery statute is divisible because it sets out alternative criminal offenses. *Blair*, 734 F.3d at 225. Therefore, the Court can look at such documents to determine the specific subsection of the robbery statute that Mr. Morris was convicted under. *Ramos*, 892 F.3d at 607. Mr. Morris' Colloquy for Plea of Guilty/ Nolo Contendere clearly demonstrates that he was convicted of robbery under 18 Pa. Cons. Stat. § 3701(a)(1)(ii). Doc. No. 40-2. After determining that Mr. Morris was convicted under § 3701(a)(1)(ii), the Court applies the categorical approach to this robbery subsection. This is the same analysis the Court applied *supra* in Section IV.A, and the Court reaches the same outcome applying the modified categorical approach as it does applying the categorical approach. The Court holds that § 3701(a)(1)(ii) robbery is a crime of violence under either the elements clause or the enumerated clause for the same reasons the Court identified in its application of the categorical approach.

arm himself with a firearm and ammunition after being released on bail. The Government emphasized that Mr. Morris' "actions were nearly the most dangerous that could occur" because Mr. Morris "was engaged in actions that nearly begged for the firearm to be used." The Court agrees that Mr. Morris' crime here was serious and violent.

### B. The History and Characteristics of the Defendant

Mr. Morris is a 32-year-old man. He was living in Philadelphia with his girlfriend at the time of his arrest. He has had little interaction with his children who live with their mothers. Mr. Morris has ten siblings. Mr. Morris was raised primarily by his paternal grandmother. His mother reportedly was addicted to drugs. His stepfather had substance abuse issues.

Mr. Morris does not have a high school degree and does not possess any professional licenses or certificates. He stopped attending high school in the 10th grade and has no legitimate employment history.

Mr. Morris has an extensive and challenging mental health history. He first received treatment when he was ten years old, and again at age fifteen (15) while in juvenile placement, and again at age twenty-four (24) while he was incarcerated. Mr. Morris has been diagnosed with bi-polar disorder and depression. He was previously prescribed psychotropic medication but apparently is not currently taking these medications. Over the years Mr. Morris has exhibited violent behavior while in custody.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

The Court acknowledges that the City of Philadelphia is plagued by drug trafficking and related violence. Mr. Morris' demonstrated incorrigibility of repeated criminal conduct demonstrates that he lacks respect for the law. He has not been deterred by his prior sentences, supervision, or treatment. A lengthy sentence is warranted.

### D. The Need for Adequate Deterrence and Protection of the Public

Given the prevalence of drug trafficking and gun violence in Philadelphia and Mr. Morris' prior and current conduct, the need for both general and specific deterrence is great. The sentence of 216 months' incarceration followed by five years of supervised release hopefully will prove sufficient to deter Mr. Morris and communicates to others that conduct such as his will lead to significant punishment. The lengthy sentence also protects the public from further crimes committed by Mr. Morris during his imprisonment and post-sentence supervision.

### CONCLUSION

Mr. Morris is a career offender because his robbery conviction is a predicate "crime of violence" under both the elements clause and the enumerated clause. Robbery is a crime of violence under the elements clause because it requires intentional conduct. Robbery is also characterized as a crime of violence under the enumerated clause because it can be committed recklessly with respect to the use of force, meaning it matches the generic definition of robbery. Mr. Morris' sentence of 216 months' imprisonment, five years' supervised release, and a $300 special assessment is warranted and, as the Court has concluded, been earned by Mr. Morris and is proper.[4]

---

[4] Even if Mr. Morris' robbery conviction was not a predicate crime of violence, the Court would impose the same sentence through an alternate analysis. The Government submitted a thorough brief, providing an extensive analysis and explanation as to why Mr. Morris' 2009 conviction for possession of marijuana is a controlled substance offense. As was previously discussed, the predicate crime for the career offender enhancement can be a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense." U.S.S.G. §4B1.2(b). Marijuana was a controlled substance under federal and state law at the time of Mr. Morris' conviction in 2009. The assessment of whether something is a controlled substance is made as of the time of the predicate offense. U.S.S.G. §4B1.1(a). Because marijuana was a controlled substance in 2009, his conviction serves as a predicate controlled substance offense. Mr. Morris challenges the classification of this offense as a controlled substance offense based on the removal of hemp from the federal and state law definitions of marijuana. However, Mr. Morris does not dispute that his conviction involved marijuana and not hemp. He

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

incorrectly argues that the current Pennsylvania definition of marijuana sweeps more broadly than the federal definition because he argues that Pennsylvania did not remove hemp from its definition of marijuana. Because the categorical approach focuses on the "minimum conduct criminalized," Mr. Morris argues that his prior conviction cannot qualify as a controlled substance. Mr. Morris' assertions are wrong, First, he is wrong because the federal and state marijuana statutes are the same: both definitions of marijuana removed hemp from the definition. Second, he is wrong that a change in the definition of marijuana impacts his conviction. Because marijuana was a controlled substance *at the time of his conviction*, his offense is a controlled substance offense. Any subsequent changes to the legality of the substance have no impact on his conviction.

If, under the categorical approach, the conclusion was somehow reached that Mr. Morris' prior marijuana conviction was not a controlled substance offense, the Court could – and would – apply an upward variance. Courts of appeals, including the Third Circuit Court of Appeals, have considered the facts of how the defendant committed the crime to add an upward variance where the categorical approach precluded the career offender sentence enhancement. *See, e.g., United States v. Wiltshire*, 736 F. App'x 322, 325 (3d Cir. 2018) (non-precedential) (holding that it was not unreasonable for the District Court to add an upward variance to the defendant's sentence when the career offender enhancement was inapplicable because of the categorical approach); *United States v. Moon*, 757 F. App'x 143, 145-46 (3d Cir. 2018) (non-precedential) (approving an upward variance based on the defendant's actual violent record where the career offender enhancement was voided due to the categorical approach); *United States v. Dahl*, 713 F. App'x 62, 66-67 (3d Cir. 2017) (non-precedential) ("While the categorical approach is required by the mechanical Guidelines calculation found at step 1, [the Court has] never held that the categorical approach's constraints apply to step 3 – or, by extension, that the facts deemed improper at step 1 may not be considered at step 3."). This Court would consider Mr. Morris' conduct in committing his drug trafficking and violent robbery crimes to weigh and then impose an upward variance. So, Mr. Morris' sentence, with the upward variance imposed, would be 216 months' imprisonment, five years' supervised release, and a $300 special assessment.